UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
INTESA SANPAOLO S.p.A.,

                                                                          08 CV. 2223 (LLS)

              Plaintiff,

   -against-

ROBERT D. PILIERO, EDWARD J. GOLDSTEIN,
And JOHN DERMOTT MITCHELL,

              Defendant.
-------------------------------------------------------------------X
ROBERT D. PILIERO and EDWARD J. GOLDSTEIN,

              Third-Party Plaintiffs,

   -against-

NEW MILLENINIUM ESTATES LTD, COLLIERS ABR,
RICHARD MICHAELS and JAMES FREDERICK,

              Third-Party Defendants.
-------------------------------------------------------------------X

# MEMORANDUM OF LAW OF THIRD-PARTY DEFENDANTS COLLIERS ABR, INC., JAMES FREDERICK AND RICHARD MICHAELS IN SUPPORT OF THEIR MOTION TO DISMISS

 

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Attorneys for Third-Party Defendants Colliers
ABR, Inc., James Frederick and Richard Michaels
199 Water Street
New York, New York 10038
(212) 232-1300

## Preliminary Statement

Third-Party Defendants Colliers ABR ("Colliers"), James Frederick ("Frederick") and Richard Michaels ("Michaels"), by their attorneys Lewis Brisbois Bisgaard & Smith LLP, submit this Memorandum of Law in support of their motion for an order pursuant to Rule 12(b)(6), F. R. Civ. P., dismissing the Third-Party Complaint and Cross-claim of defendant John Dermott Mitchell for failure to state a claim upon which relief can be granted.

Plaintiff asserts a single claim for relief against the three Defendants, for alleged breach of a guarantee that defendants extended in connection with a commercial office lease. In turn, the defendants assert claims against the Third-Party Defendants for contribution and indemnification, alleging that the Third-Party Defendants should be held responsible for the damages sought from defendants. Those claims should be dismissed. In brief, the Third-Party Complaint and Mitchell's Cross-claim appear to be misguided attempts by the Guarantors to find other deep pockets who will contribute to a fund to pay Plaintiff notwithstanding that the liability herein, if any, properly belongs solely to the Guarantors.

It is well established that claims for contribution and implied-in-law indemnification do not arise when, as here, the underlying cause of action is for breach of contract. The Defendants also cannot assert a claim for implied-in-fact indemnification, because the Guarantors retained a duty to Plaintiff, and did not delegate same to Third-Party Defendants, and Third-Party Defendants did not otherwise owe any such duty to Plaintiff. In short, Defendants have no valid basis for seeking indemnification or contribution, and their claims against movants should be dismissed with prejudice.

## The Allegations of the Pleadings

According to the Complaint (Shapiro Declaration Exhibit B), Plaintiff, an Italian bank licensed in New York State, entered into a 1994 lease pursuant to which it rented office space on the 35th and 36th floors of 10 East 53rd Street from New Millennium Estates, Ltd. ("New Millennium"). The lease term was to terminate on December 31, 2008. On March 20, 2003, Plaintiff sublet the premises to a law firm, Piliero Goldstein Kaiser & Mitchell, LLP ("PGKM"). The sublease term ran until December 29, 2008. Simultaneously with the Sublease, the four partners of PGKM executed a Guarantee of PGKM's obligations under the Sublease. Three of those partners are the defendants herein: Robert J. Piliero, Edward J. Goldstein and John Dermott Mitchell.

The Complaint alleges that PGKM defaulted under the Sublease by failing to pay rent, operating expenses, electrical charges and tax escalation for October and November 2007, for total arrears of $135,346.22. PGKM "purported" to vacate the premises by November 30, 2007, although it is alleged that PGKM failed to leave the premises broom clean and certain equipment had not been removed. Plaintiff alleges that PGKM is also liable for the rent due for the balance of the Sublease, less a credit received by Plaintiff from re-letting, net of Plaintiff's re-letting expenses.

Plaintiff contends that PGKM still owes it "Post-Vacation Damages" that exceed the aggregate of rent paid by PGKM and the amount of its security deposit. Plaintiff exercised its right to apply PGKM's rent payments and security deposits to reduce the Post-Vacation Damages. The arrears amount of $135,346.22 allegedly remains unpaid after application of the security deposit. Plaintiff seeks the arrears, as well as cleaning costs of $1,200, from Defendants as Guarantors.

Defendants allegedly are also liable for Plaintiff's expenses and damages, including counsel fees, arising from PGKM's default under the Sublease or Guarantee.

Plaintiff contends that Defendants have failed and refused to pay the arrears despite due demand. Accordingly, Plaintiff seeks damages of $136,546.22, plus expenses including counsel fees, for breach of the Guarantee.

Two answers were served. Former PGKM partner Mitchell answered separately (Shapiro Declaration Exhibit C). Former PGKM partners Goldstein and Piliero answered jointly (Shapiro Declaration Exhibit A). Their answer includes the third party claim against movants and New Millennium. Mr. Mitchell's answer contains a cross-claim against movants and New Millennium.

Goldstein and Piliero's Third-Party Complaint sets forth their version of the facts pertaining to Plaintiff's claim under the Guarantee, and purports to set forth a basis for holding the Third-Party Defendants responsible for the damages sought from them. Goldstein and Piliero admit that they executed the Guarantee, but allege that the damages sought by Plaintiff are largely the responsibility of the Third-Party Defendants based on a myriad of factual allegations that fail to allege any actionable conduct under any recognized legal theory.

Defendants contend that they should have no liability under the Guarantee after PGKM vacated because their obligations had been "reduced to zero" as of March 19, 2006. However, they also contend that, if they are held liable to Plaintiff, the Third-Party Defendants should be held liable for the full amount of Plaintiff's liability.

Colliers is a real estate firm of which Fredericks and Michaels are managing directors. They allegedly are the exclusive agents for New Millennium in connection with the subject premises. The

Third-Party Complaint alleges that Piliero advised Michaels in June 2007 that PGKM needed to vacate the premises as a result of "certain events" at the firm, and that it was considering engaging a real estate broker to locate a subtenant. Piliero allegedly also told Michaels that New Millennium might want to recapture the premises, because Michaels had told him that the market rent was $80 per square foot, while PGKM was paying $45 per square foot.

Michaels and Frederick then allegedly met with Goldstein and told him the market rent was closer to $90 per square foot. They suggested that New Millennium would have little or no interest in recapturing the space because its 2007 budget had been completed and they would not want to do a new budget even if they were to earn more revenue from substantially increased rent. Piliero and Goldstein allegedly were skeptical; Michaels and Frederick's only alleged response was that the "crazy Italians" behind New Millennium were hard to understand. They also said that New Millennium would not want to incur a substantial brokerage fee in 2007, but might do so in 2008.

Piliero and Goldstein allegedly stressed to Michaels and Frederick that it was critical for PGKM to vacate before year end 2007 and they therefore would hire a broker. Michaels and Frederick allegedly responded that, because a broker would not be able to find a subtenant for a lease due to expire 18 months later, PGKM should hire them. Michaels and Frederick allegedly stressed that, as New Millennium's exclusive agents, they were in a unique position to sublease. Piliero and Goldstein allege that they did not then know that Michaels and Fredericks had the ability and wherewithal to interfere with and block PGKM's access to New Millennium.

Michaels and Frederick also allegedly said that other tenants might vacate and would likely take over PGKM's space, and said that it made more sense for PGKM to hire them rather than another broker that did not have the inside track. Piliero asked whether Michaels and Frederick

would receive multiple commissions; Michaels and Frederick allegedly confirmed that they would, if successful, be paid by the new tenant taking over PGKM's space and the new tenant who took over the existing tenant's space, as well as a commission from PGKM. When Piliero allegedly expressed shock, Frederick's alleged response was to deny that there was any overreaching and to reiterate that hiring them would serve PGKM's best interests.

Piliero then allegedly contacted Plaintiff, which confirmed that it would consent to a further sublease to a credit-worthy tenant, but would prefer that New Millennium recapture the space. Piliero allegedly told Michaels of Plaintiff's statement. Piliero then learned that a law firm, McKee Nelson, would be interested in a relatively short-term lease. It is averred that PGKM and McKee Nelson quickly came to terms under which the latter would have moved in by August 31, 2007. Both Plaintiff and Michaels allegedly deemed McKee Nelson's financial information satisfactory. Plaintiff allegedly expressed its preference that New Millennium recapture the space, and Piliero passed this idea on to Michaels.

In August 2007, Michaels allegedly reported that New Millennium and Plaintiff were talking about having New Millennium contract directly with McKee Nelson, which New Millennium supposedly was ready to do. Michaels allegedly told Piliero that New Millennium's representatives said that Plaintiff should have shown more gratitude for New Millennium's willingness to recapture the space. Piliero allegedly asked whether Michaels told that to Plaintiff; Michaels said it was inappropriate for him to contact Plaintiff directly. Piliero avers that this advice made no sense to him, since Michaels no doubt had frequently dealt with Plaintiff in his capacity as New Millennium's exclusive agent. It supposedly was clear to Piliero that Michaels was not interested in having the transaction proceed, because Michaels would not earn a commission or would earn a far lower commission.

Piliero allegedly passed along to Plaintiff's representative Anthony Cardinale the request that it show gratitude. Cardinale allegedly said that made no sense. Piliero contends that he reported that comment to Michaels, and then repeatedly called Michaels to find out whether the new arrangement would be a sublease or a direct lease. Piliero and Goldstein assert that they relied on Michaels and Fredericks' representations in this regard.

Michaels and Frederick allegedly never suggested that PGKM submit a proposed sublease to McKee Nelson. According to Piliero and Goldstein, PGKM would have been ready, willing and able to do so because it had already had McKee Nelson sign such a sublease, which it had not yet signed or forwarded based on Plaintiff's preference for a direct lease between New Millennium and McKee Nelson. Throughout August and early September, Piliero asserts that he made five attempts to speak directly to New Millennium; however, because Michaels allegedly refused to arrange a meeting for Piliero with the New Millennium representative, or to provide other contact information, Piliero failed to contact New Millennium.

When August 31 came and went, Piliero and Goldstein allegedly realized that Michaels and Frederick must be interfering with or blocking any transaction until PGKM agreed to pay them a commission even though they had done no work. In September, Piliero allegedly told Michaels that he would pay a commission, and Michaels assented.

Shortly thereafter, McKee Nelson said that it no longer wanted the space due to the delay in arranging occupancy. Piliero alleges that he told Michaels what had happened, and expressed surprise that Michaels had not facilitated the transaction in which he would have earned a fee. Michaels allegedly responded that his personal fee would not have been that much money.

PGKM allegedly sought a substitute tenant, but was unsuccessful. It allegedly vacated, paid the amounts due and irrevocably turned over possession to Plaintiff on November 30, 2007. Piliero and Goldstein aver that the only reason the premises were vacant in December 2007 and not re-let earlier, and the only reason Plaintiff needed to pay a brokerage commission to re-let, was the conduct of Plaintiff and the Third-Party Defendants as described above.

The Third-Party Complaint concludes without articulating any detailed theory of why Piliero and Goldstein are entitled to relief, and instead avers generally: "In the event the Guarantors are found to have any liability to Intesa on its claim in this action, which Guarantors deny, third-party defendants . . . should be liable jointly and severally based on, among other things, their tortious and deceptive conduct and business practices and their tortious interference with the Guarantee."

Defendant Mitchell's Answer contains a very conclusory cross-claim for contribution and/or indemnification against New Millennium, Colliers, Frederick and Michaels.

## ARGUMENT

## THE GUARANTORS HAVE
## NO VIABLE CONTRIBUTION OR
## INDEMNITY CLAIMS AGAINST MOVANTS

The Third-Party Complaint and Mitchell's Cross-claim fail to state claims for the relief sought; *viz,* contribution and indemnification.

## I. The Guarantors Cannot Assert Contribution Claims

The only claim for relief asserted by Plaintiff's Complaint against Piliero, Goldstein and Mitchell sounds in breach of contract. It is clear that a party defending a contribution claim has no right to seek contribution from third parties. Contribution is a right giving rise to proportionate sharing of liability among joint, successive, independent, alternative or intentional joint tortfeasors. CPLR 1401 states in pertinent part that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them . . ." Accordingly, "[a] right of contribution will not be implied in actions arising solely from breach of contract." Macmillan, Inc. v. Fed. Ins. Co., 764 F. Supp. 38, 41 (S.D.N.Y. 1991).

It is clear that New York law permits risk sharing only with respect to tortious conduct only. Board of Educ. of the Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 28, 523 N.Y.S.2d 475, 478 (1987)(declining to create a common law right of contribution in contract actions).

In sum, because, "unlike tort law, contract law does not provide for proportional liability among potentially culpable parties", the contributions claims of Piliero and Goldstein, and Mitchell, must be dismissed. Point Products A.G. v. Sony Music Entertainment Inc., 215 F. Supp.2d 336, 354 (S.D.N.Y. 2002). *Accord*, Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Barney Associates, 89 Civ. 3235, 1992 U.S. Dist. LEXIS 15230, *8 (S.D.N.Y. 1992).

## II. The Guarantors' Indemnification Claims Fail

In the absence of an express agreement to indemnify – which the Guarantors do not allege – there are only two grounds for implied indemnification: Implied in law indemnity and implied in fact indemnity. People's Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986). The implied indemnification claims asserted by Piliero and Goldstein, and by Mitchell, clearly fail to state either of those claims for relief

### A. Indemnification Implied by Law

> Conceptually, implied indemnification finds its roots in the principles of equity. It is nothing short of simple fairness to recognize that '(a)  person who, in whole or in part, has discharged a duty which is   owed to him but which as between himself and another should have been discharged by the other, is entitled to indemnity.' To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs . . . 'where payment by one person is compelled, which another should have made . . . a contract to reimburse or indemnify is implied by law.'

McDermott v. City of New York, 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 646 (1980)(citations omitted).

Thus, a contract to indemnify will be implied by law only when the facts show that a party was unfairly required to discharge a duty that should have been discharged by another. Board of Educ. of the Hudson City School Dist., *supra*, 71 N.Y.2d at 29-30 (citing McDermott, *supra*). Third-Party Plaintiffs cannot allege that, by virtue of being required to pay damages owed pursuant to the Guarantee they executed, they were unfairly required to discharge a duty that the Third-Party Defendants should have exercised. The duty established by the Guarantee belonged solely to the

defendants, who executed it. *Accord*, Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Barney Associates, *supra,*8.

Critically here, the fact that Plaintiff's underlying claim is for breach of contract is dispositive of the Guarantors' claims for indemnification implied in law. "'Implied in law' indemnity applies 'when there is a great disparity in the fault of two joint tortfeasors and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other." People's Democratic Republic of Yemen v. Goodpasture, Inc., *supra,* 782 F.2d at 346 (citation omitted). Such an implied right will exist only with respect to a tort cause of action, such as where one joint tortfeasor seeks indemnification from another joint tortfeasor. Pro Bono Investments, Inc. v. Gerry, 03 Civ. 4347, 2005 U.S. Dist. LEXIS 22348 (S.D.N.Y. Sept. 30, 2005); PrO Unlimited, Inc. v. Kelly Services, Inc., 04 Civ. 1813, 2007 U.S. Dist. LEXIS 20047 (E.D.N.Y. March 12, 2007).

Because the underlying claim here does not sound in tort, this form of implied indemnification is unavailable to the Guarantors.

## B.   Indemnity Implied In Fact

Indemnity will be implied in fact when the proposed indemnitee possesses a non-delegable duty to a third party, but has transferred that responsibility by implied agreement to the proposed indemnitor. Matter of Poling Transportation Corp., 784 F. Supp. 1045, 1048 (S.D.N.Y. 1992). There is no right of implied indemnity when the proposed indemnitee retains a duty owed directly to the third party or the proposed indemnitor has not breached a duty owed to the plaintiff. *Id.*; Guzman v. Haven Plaza Housing Devel. Fund Co., 69 N.Y.2d 559, 569, 516 N.Y.S.2d 451 (1987).

Here, the proposed indemnitees – Piliero, Goldstein and Mitchell – retain their duties under the Guaranty to pay the sums that are determined to be due and owing to Plaintiff. And the proposed indemnitors – Colliers, Frederick and Michaels – are not alleged to have owed any duty to Plaintiff or to have breached any such duty. These three Third-Party Defendants are not alleged to have been in privity with Plaintiff.

In short, the Guarantors cannot make out their heavy burden to establish an implied agreement to indemnify. "There simply is nothing in . . . the parties' dealings from which an agreement to indemnify could 'fairly be implied.'" People's Republic of Yemen v. Goodpasture, Inc., *supra,* 782 F.2d at 351 (citation omitted).

## II.   DISCOVERY SHOULD BE STAYED

It is respectfully submitted that, because the Guarantors' claims against movants are so patently without merit, this is an appropriate case for the Court to exercise its discretion to stay discovery rather than have discovery proceed prior to such time – if any - as the Court determines that there is a valid pleading to which Third-party Defendants are obligated to serve a responsive pleading. Staying discovery is appropriate under the instant circumstances because Colliers, Frederick and Michaels never should have been brought into this case, and the interest of justice supports their being dismissed without exposure to unwarranted expense and inconvenience. Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 130 (2d Cir. 1987); Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209 (S.D.N.Y. 1991).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant the motion to dismiss of Third-Party Defendants Colliers, Frederick and Mitchell together with such other and further relief as is just and proper.

Dated:   New York, New York
         June 9, 2008

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: _____
Peter T. Shapiro, Esq.
Attorneys for Third-Party Defendants Colliers
ABR, Inc., James Frederick & Richard Michaels
199 Water Street
New York, New York 10038
(212) 232-1300

## CERTIFICATE OF SERVICE

I hereby certify that I served the within memorandum of law upon the attorneys for all of the parties hereto by first class mail and ECF on June 9, 2008.

_____
Peter T. Shapiro (PS 9692)