UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
INTESA SANPAOLO S.p.A.,                                    :
                                                           :
              Plaintiff,                                  :
                                                           :
            -against-                                     :
                                                           :
ROBERT D. PILIERO, EDWARD J. GOLDSTEIN,                    :
and JOHN DERMOTT MITCHELL,                                 :
                                                           :
             Defendants.                                :
------------------------------------------------------------------------x   08. Cv. 2223 (LLS)
ROBERT D. PILIERO and EDWARD J. GOLDSTEIN               :
                                                           :
            Third-Party Plaintiffs,                     :
                                                           :
            -against-                                     :
                                                           :
NEW MILLENNIUM ESTATES LTD, COLLIERS ABR,                  :
RICHARD MICHAELS and JAMES FREDERICK,                      :
                                                           :
            Third-Party Defendants.                    :
------------------------------------------------------------------------x

**MEMORANDUM OF THIRD-PARTY PLAINTIFFS IN OPPOSITION TO
MOTION TO DISMISS OF THIRD-PARTY DEFENDANTS COLLIERS ABR,
INC., RICHARD <u>MICHAELS AND JAMES FREDERICK</u>**

      Defendants and Third-Party Plaintiffs Robert D. Piliero ("Piliero") and Edward J. Goldstein ("Goldstein") (collectively, "Guarantors" or "Third-Party Plaintiffs"), through their attorneys, Richards Kibbe & Orbe LLP, hereby respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss filed by Third-Party Defendants Colliers ABR, Inc. ("Colliers ABR"), Richard Michaels ("Michaels") and James Frederick ("Frederick") (collectively, "Third-Party Defendants").

## PRELIMINARY STATEMENT

Pretending to misunderstand the nature of the claims asserted by Third-Party Plaintiffs, the Third-Party Defendants set up a straw man and then easily knock it down. In doing so, they accomplish nothing other than to further burden the Court in a case that should never have been filed at all, much less in Federal District Court.

## STATEMENT OF FACTS

The first sentence of Third-Party Defendants' argument in support of their motion to dismiss reveals the fatal flaw underlying their entire motion:

> The Third-Party Complaint and Mitchell's cross-claim fail to state claims for the relief sought, viz, contribution and indemnification.

Third-Party Defendants' Memorandum in Support of Motion to Dismiss, at 7. Third-Party Defendants thus set up a straw man--that the Third-Party Complaint is based solely on claims for contribution and indemnification--and then spend the balance of the Memorandum knocking down that straw man. In fact, however, the claims debunked by the Third-Party Defendants in their moving papers are not the claims asserted by Third-Party Plaintiffs. The Third-Party Complaint specifically alleges:

> In the event the Guarantors are found to have any liability to Intesa [SanPaolo S.p.A.] [the Plaintiff in this action] on its claim in this action, which Guarantors deny, Third-Party Defendants New Millennium, Colliers, Michaels and Frederick should be held jointly and severally liable based on, among other things, their tortious and deceptive conduct and business practices and their tortious interference with the Guaranty.

Answer and Third-Party Complaint, ¶ 27.

There simply is no reference in this allegation--or indeed elsewhere in the Third-Party Complaint--to a claim for indemnification or contribution. Although the Third-

Party Complaint certainly alleges derivative liability in that Third-Party Defendants will only be liable if and, to the extent that, the Third-Party Plaintiffs are found liable on the Plaintiff's claims against them, such derivative liability is premised on the substantive claims of negligent misrepresentation, fraud and deceit, and tortious interference with contract that are clearly and properly alleged in the Third-Party Complaint.  Yet, the sole basis for Third-Party Defendants' Motion to Dismiss is an attack on the legal viability of unasserted claims for contribution and indemnity.  Consideration of the claims that are actually asserted in the Third-Party Complaint demonstrates that such claims are properly stated and, accordingly, that Third-Party Defendants' Motion to Dismiss should be denied in all respects.

## ARGUMENT

### POINT I

### FEDERAL RULE 14(a) DOES NOT LIMIT THIRD-PARTY CLAIMS TO ONLY CONTRIBUTION AND INDEMNITY, BUT LIBERALLY ALLOWS DERIVATIVE CLAIMS OF ANY LEGAL THEORY ARISING FROM THE SAME FACTUAL CIRCUMSTANCES

Federal Rule of Civil Procedure 14(a)(1) provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it . . . ."  Thus, contrary to Third-Party Defendants attempt to artificially restrict it, Rule 14(a) contains no requirement that a third-party claim be sought solely under the legal theories of contribution or indemnity.  Rather, it has been the law of this Circuit for half a century that the purpose of Rule 14(a) is:

> to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and do away with the

> serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against a third-party defendant.

*Dery v. Wyer*, 265 F.2d 804, 806-07 (2d Cir. 1959).

Indeed, regardless of the legal theories pursuant to which a defendant may allege a third-party claim, this Court has repeatedly confirmed that:

> the policy behind Rule [14(a)], which is to facilitate judicial economy by avoiding multiple and circuitous suits, . . . should not be defeated by a narrow or technical interpretations of the Rule's requirements.

*Affiliated FM Ins. Co. v. Jou Jou Designs, Inc.*, 1993 U.S. Dist. LEXIS 14547, at *6 (S.D.N.Y. Oct. 15, 1993) (*quoting Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566 (S.D.N.Y. 1983)); *see also Phoenix Mutual Life Ins. Co. v. Seafarers Officers & Employees Pension Plan*, 128 F.R.D. 25 (S.D.N.Y 1989) (the "essential purposes of Rule 14 are certainly served" in allowing impleader where the factual and evidentiary bases of primary and third-party claims overlap and are interrelated).

The language of Rule 14(a) itself clearly indicates:

> The secondary or derivative liability notion is central [to Rule 14] **and it is irrelevant whether the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.**

Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1446 (emphasis added). Thus, the only requirement for a third-party claim is that "the third-party defendant's liability 'must be derivative of or secondary to that of the third-party plaintiff." *Farmers Production Credit Assoc. of Oneonta v. Whiteman*, 100 F.R.D. 310, 312 (N.D.N.Y. 1983) (quotation omitted), for example, defendant/third-party plaintiffs, who had been sued for breach of a promissory note and mortgage, asserted in their third-

party claim that, to the extent that they were liable on the note at issue, it was as a result of third-party defendants' multiple misrepresentations made during the negotiations of that note. Properly disregarding the distinct legal theory upon which the third-party claim was premised (fraudulent inducement and misrepresentations rather than breach of contract), impleader was permitted because:

> Liberally read, the defendants' third-party complaint asserts that its liability to the plaintiffs, if any, may be traced in whole or in part to the third-party defendants, whose misrepresentations induced the defendants to give the note and mortgage to the plaintiffs. . . . [the] allegations of misrepresentation goes to the creation of the [third-party plaintiffs'] liability on the particular instruments sued upon in the action.

*Id*. at 313; *see also Stellan Holm, Inc. v. Malmberg Int'l Art*, 2002 U.S. Dist. LEXIS 4126 (S.D.N.Y. Mar. 13, 2002) (denying motion to dismiss third-party claims of breach of bailment and conversion where such claims were derivative of defendants' alleged liability to plaintiff and intertwined with the facts thereof); *May's Family Centers, Inc. v. Goodman's, Inc.*, 104 F.R.D. 112 (N.D. Ill 1985) (denying motion to dismiss third-party claim that law firm's negligence was the cause of defendant/third-party plaintiff's alleged breach of contract and liability to plaintiff, and the same facts were relevant to both claims).

Here, there can be no doubt that the liability alleged by the Third-Party Complaint is wholly derivative of, and secondary to, the liability alleged by Plaintiff against Third-Party Plaintiffs. Moreover, such third-party claims arise from the same set of operative facts as those underlying Plaintiff's contract claim and will implicate a near identity of evidentiary issues. Specifically, Paragraphs 9-26 of the Third-Party Complaint set forth a litany of allegations which, if proved, would establish that--as alleged in Paragraph 27--

Third-Party Defendants engaged in "tortious and deceptive conduct and business practices and [] tortious interference with the Guarantee," and that the sole basis for the claims asserted against Defendants and Third-Party Plaintiffs--the fact that the subject premises were vacant for one month--is the conduct engaged in by Intesa and the Third-Party Defendants. Third-Party Complaint, ¶¶ 26-27.

Contrary to the straw man set up by Third-Party Defendants' instant motion, Third-Party Plaintiffs' claims are, therefore, not that the Third-Party Defendants are contractually obligated to indemnify them, or that the Third-Party Defendants are joint tortfeasors with the Third-Party Plaintiffs, but rather that the Third-Party Defendants engaged in their own tortious, negligent and fraudulent conduct that caused the one-month vacancy in the subject premises that forms the sole basis for--and is entirely derivative of--Plaintiff's claims against the Guarantors in this action.

## POINT II

### THE THIRD-PARTY COMPLAINT PLEADS PROPER DERIVATIVE CLAIMS AGAINST THIRD-PARTY DEFENDANTS

Although their instant motion does not even address the actual claims alleged by the Third-Party Complaint, it is assumed that Third-Party Defendants inartfully seek to attack the pleading of such claims. As this Court recently confirmed, in deciding a motion to dismiss under Rule 12(b)(6), the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Brady v. Lynes*, 2008 U.S. Dist. LEXIS 43512, at *14 (S.D.N.Y. June 2, 2008) (*quoting Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)). This standard is no different for a third-party claim. *Stellan Holm, Inc.*, 2002 U.S. Dist. LEXIS 4126, at *14. Therefore, liberally and

- 6 -

favorably construing its allegations, the Third-Party Complaint must plead only "enough facts to state a claim to relief that is plausible on its face" in order to defeat a motion to dismiss. *Brady*, 2008 U.S. Dist. LEXIS 43512, at *13 (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

As discussed below, the factual allegations asserted in the Third-Party Complaint more than satisfy this standard and properly establish claims of: (a) negligent misrepresentation; (b) deceptive and fraudulent conduct and business practices; and (c) tortious interference with contract.

### A.  **Negligent Misrepresentation**

The first claim pleaded by the facts alleged in the Third-Party Complaint--but entirely ignored by the instant motion--is that, to the extent Third-Party Plaintiffs are liable to Plaintiffs, such liability was caused by the negligent misrepresentations made to them by Third-Party Defendants after taking on the duty of acting as Third-Party Plaintiffs' broker with respect to the premises at issue. Under New York law, a claim of negligent misrepresentation must allege:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). Any straight-forward--much less liberal--reading of the Third-Party Complaint clearly pleads facts sufficient to satisfy each of these elements.

First, Third-Party Defendants offered—indeed insisted--to be and then undertook responsibility as Third-Party Plaintiffs' brokers with respect to the subject premises, thereby establishing a special relationship and giving rise to a duty to give correct information. Third-Party Complaint, ¶¶ 12-14. Indeed, Third-Party Defendants Michaels and Frederick (acting individually and through their employer Colliers ABR, as agents for Third-Party Defendant New Millennium Estates Ltd. ("New Millennium")) repeatedly represented to and convinced Piliero and Goldstein that "it would make far more sense for PGKM to engage" them than deal with any other broker. *Id.* at ¶ 14.

Second, Third-Party Defendants repeatedly misrepresented that New Millennium was prepared to enter into an agreement by which a new tenant would occupy the subject premises as of August or September 2007, and that the only outstanding question was whether that result would be accomplished by a Further Sublease from PGKM or a new lease directly with New Millennium. *Id*. at ¶¶ 19-20. Firmly establishing the element of a false representation, the Third-Party Complaint explicitly alleges:

> Michaels had earlier reported that New Millennium would consent to a further sublease, and that New Millennium would also be willing to enter into a direct lease with the proposed new tenant, but Michaels professed not to know which approach would ultimately be used. Intesa likewise continued to profess that it did not know how the transaction would ultimately be structured. The one thing that was [represented to be] crystal clear, however, was that the proposed new tenant was acceptable to both New Millennium and Intesa.

*Id*. at ¶ 20.

Third, the Third-Party Complaint also alleges that Piliero and Goldstein repeatedly told Michaels and Frederick (and through them Colliers ABR and New Millennium) how important it was that the subject premises be re-leased well before the

end of 2007 because PGKM had to vacate. As just one example, the Third-Party Complaint explicitly states that "Piliero and Goldstein emphasized that it was important for PGKM to vacate the premises considerably earlier than year-end 2007." *Id*. at ¶ 13. Thus, even a cursory reading of the Third-Party Complaint belies any claim that there was not notice that the information represented to the Third-Party Plaintiffs regarding the re-leasing of the subject premises was desired for a serious purpose--*i.e*., facilitating PGKM's ability to vacate the subject premises.

Fourth, there can be no question that such false representations were clearly intended to by relied upon by the Third-Party Plaintiffs Piliero and Goldstein because they had told Third-Party Defendants early and often that it was urgently important for them to have PGKM vacate and re-lease the leased premises so as to avoid continuing liability under its sublease since the law firm was moribund. As the Third-Party Complaint also alleges, Piliero and Goldstein made it clear to Michaels and Frederick—and through them, to Colliers ABR and New Millennium—that: (a) they intended to cause PGKM to retain another real estate broker to re-lease the subject premises; (b) the only reason they did not do so is that Third-Party Defendants repeatedly falsely represented that "PGKM's interests would be best served by engaging them as brokers," rather than working with any other real estate broker or undertaking any efforts directly; and (c) Third-Party Defendants then falsely represented that the proposed substitute tenant would be accepted as either a new direct tenant of the landlord New Millennium—the principal for which Michaels, Frederick and Colliers ABR served as agent—**or** as a subtenant of PGKM, with only the specific form of that arrangement to be decided. *Id*. at ¶¶ 14-20

Finally, Third-Party Plaintiffs did in fact reasonably rely on the false representations made to them by Third-Party Defendants, and if they have any liability to Plaintiff Intesa in this action, that reliance was very much to their detriment. Michaels and Frederick had repeatedly assured Piliero and Goldstein that only the form (direct tenant vs. further subtenant) was in doubt, and that there was no need for Third-Party Plaintiffs to retain any other real estate broker or propose a Further Sublease themselves. *Id*. at ¶¶ 20-21. By the time Third-Party Plaintiffs finally realized that such representations were false, the replacement tenant--which had already executed and delivered to PGKM a Further Sublease that Third-Party Plaintiffs never submitted because they were told it was not necessary--was no longer willing to proceed due to the delay caused by Third-Party Defendants. As the Third-Party Complaint alleges, Piliero and Goldstein then did everything they could to re-let the subject premises themselves, but the damage caused by Third-Party Defendants was done. As a direct result of their reliance on Third-Party Defendants' false assurances as their broker, the opportunity was lost and the subject premises were not re-leased when PGKM vacated in November 2007. *Id*. at ¶¶ 21-26.

Given that the only potential basis for Piliero and Goldstein to have liability to the Plaintiff stems from the subject premises being vacant during the month of December 2007, if Piliero and Goldstein are found to have any such liability, it is therefore the direct and proximate result of Third-Party Defendants' negligent misrepresentations.

**B.     Fraud and Deceit**

To state a claim for fraud based on Third-Party Defendants' tortious and deceptive conduct at issue, under New York law, the Third-Party Plaintiffs were required to plead facts which--assumed to be true for purposes of this motion--state:

> (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud (4) reasonable reliance on the part of the plaintiff and (5) resulting damage to the plaintiff.

*Crigger v. Fahnestock and Co., Inc.,* 443 F.3d 230, 234 (2d Cir. 2006).

Without repeating each of the allegations discussed in the preceding subsection, those same particularized and factual allegations establish the first, fourth and fifth of the elements of Third-Party Plaintiffs' fraud claim.  The Third-Party Complaint's further allegations of Third-Party Defendants' strategic and intentional misconduct establish, for pleading purposes, their knowledge of the falsity of their above-referenced material misrepresentations as well as their intent to defraud Third-Party Plaintiffs in the hopes of obtaining a larger commission as a result.  Third-Party Complaint, ¶¶19, 22.  Finally, Michaels came clean in further admitting that he and Third-Party Defendants had intentionally induced Third-Party Plaintiffs' reliance and forbearance from pursuing a sublease directly or through another broker in the hopes of earning a double commission, but then not done anything because "it really would not have been that much money for him personally."  *Id.* at ¶¶ 14, 24.

In short, even aside from the particular duty owed as a result of their special relationship (resulting in liability for negligent misrepresentation), Third-Party Defendants' intentional inducement of Third-Party Plaintiffs to rely to their detriment of

these knowingly false assurances that a sub- or re-lease would be accomplished with the proposed new tenant also more than sufficiently alleges a claim of fraud with abundant particularity under New York law.

### C.     Tortious Interference with Contract

The elements of a claim for tortious interference with contract under New York law are that: (1) a valid contract existed; (2) defendant had knowledge of the contract; (3) defendant intentionally and improperly caused the breach of the contract; and (4) the breach resulted in damages to the claiming party. *Finley v. Giacobbe*, 79 F.3d 1287, 1294 (2d Cir. 1996). Third-Party Defendants' wrongful conduct was also calculated to and did interfere with Third-Party Plaintiffs' contract with Plaintiff Intesa. Thus, to the extent that Third-Party Plaintiffs may be determined to have breached their Guaranty as alleged by Intesa, such breach would have been directly caused by the Third-Party Defendants' foregoing misconduct.

Specifically, it cannot be denied that Third-Party Defendants were aware of Third-Party Plaintiffs' contract with Intesa, the existence of which is not in dispute. Indeed, as agents of New Millennium, it was Colliers ABR, Frederick and Michaels that had insisted that Piliero and Goldstein execute the Guaranty. Furthermore, the entire premise of the Third-Party Complaint is that: (a) Third-Party Plaintiffs were attempting to comply with their contractual obligations to Intesa under the Guaranty, consistent with the need for PGKM to vacate the subject premises; but if any breach of the Guaranty is found to have occurred, it is only because Piliero and Goldstein's diligent efforts to have PGKM vacate and re-let the premises with no rent interruption to Intesa were thwarted by the conduct of Third-Party Defendants. It is clear throughout the allegations of the Third-

Party Complaint that, though effected by means of their material misrepresentations to Third-Party Plaintiffs, the conduct complained of is principally that Third-Party Defendants improperly obstructed Third-Party Plaintiffs' ability to fulfill its own contractual obligations by obtaining a new tenant to sub- or re-lease the subject premises. Third-Party Complaint, ¶¶ 19-24.  Thus, to the extent that Third-Party Plaintiffs' might be found to have breached their contract with plaintiff, they certainly would not have done so--and therefore would not be liable for any damages--but for the intentional interference of the Third-Party Defendants clearly alleged in the Third Party Complaint.

*          *          *

Under each of the foregoing legal theories, the result is the same.  To the extent Third-Party Plaintiffs have any liability to Plaintiff, such liability was directly and proximately caused by the actionable misconduct of Third-Party Defendants arising from the same common nucleus of series of operative facts that underlie Plaintiffs' claims against Defendants/Third-Party Plaintiffs Piliero and Goldstein.  Therefore, regardless of the legal theory at issue, each such claim is appropriately brought as a third-party claim in this action pursuant to Rule 14(a), Fed. R. Civ. P.

## CONCLUSION

For the foregoing reasons, Third-Party Defendants' motion to dismiss the Third-Party Complaint should be denied in its entirety.

Dated:   New York, New York
         July 11, 2008

                                          **RICHARDS KIBBE & ORBE LLP**

                                          By: /s/ Craig A. Newman
                                              Craig A. Newman

                                              One World Financial Center
                                              New York, New York 10281-1003
                                              Telephone:  (212) 530-1924

                                              *Attorneys for Defendants and Third-Party Plaintiffs Robert D. Piliero and Edward J. Goldstein*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 11, 2008, I caused to be served the foregoing Memorandum of Third-Party Plaintiffs In Opposition to Motion to Dismiss of Third-Party Defendants Colliers ABR, INC., Richard Michaels and James Frederick through the Court's electronic notification system to all registered counsel.

                                                               _____
                                                                    Adam Marsh