UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
INTESA SANPAOLO S.p.A.,

                                  08 CV. 2223 (LLS)

                      Plaintiff,

        -against-

 ROBERT D. PILIERO, EDWARD J. GOLDSTEIN,
And JOHN DERMOTT MITCHELL,

                    Defendant.
------------------------------------------------------------------------X
ROBERT D. PILIERO and EDWARD J. GOLDSTEIN,

                Third-Party Plaintiffs,

        -against-

NEW MILLENNIUM ESTATES LTD, COLLIERS ABR,
RICHARD MICHAELS and JAMES FREDERICK,

                Third-Party Defendants.
------------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW OF THIRD-PARTY DEFENDANTS COLLIERS ABR, INC., JAMES FREDERICK AND RICHARD MICHAELS IN SUPPORT OF THEIR MOTION TO DISMISS

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Attorneys for Third-Party Defendants Colliers
ABR, Inc., James Frederick and Richard Michaels
199 Water Street
New York, New York  10038
(212) 232-1300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
INTESA SANPAOLO S.p.A.,

                         Plaintiff,

        -against-

 ROBERT D. PILIERO, EDWARD J. GOLDSTEIN,
And JOHN DERMOTT MITCHELL,

                         Defendant.
------------------------------------------------------------------------X
ROBERT D. PILIERO and EDWARD J. GOLDSTEIN,

                         Third-Party Plaintiffs,

        -against-

NEW MILLENNIUM ESTATES LTD, COLLIERS ABR,
RICHARD MICHAELS and JAMES FREDERICK,

                         Third-Party Defendants.
------------------------------------------------------------------------X

08 CV. 2223 (LLS)

# REPLY MEMORANDUM OF LAW OF THIRD-PARTY DEFENDANTS COLLIERS ABR, INC., JAMES FREDERICK AND RICHARD MICHAELS IN SUPPORT OF THEIR MOTION TO DISMISS

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Attorneys for Third-Party Defendants Colliers
ABR, Inc., James Frederick and Richard Michaels
199 Water Street
New York, New York  10038
(212) 232-1300

## Preliminary Statement

Third-Party Plaintiffs Piliero and Goldstein argue that their Third-Party Complaint does not purport to assert the contribution and indemnification claims addressed by this motion, and instead asserts viable negligent misrepresentation, fraud and tortious interference with contract claims even though the Third-Party Complaint does not explicitly state any of those claims. No such claims have been, or can be, stated here based on the facts alleged.

Third-Party Plaintiffs conspicuously do not seek to proffer an amended pleading or seek leave to amend. Having eschewed the opportunity to seek leave to amend, it is respectfully submitted that the Court should not grant leave to amend even in the unlikely event that it discerns some potentially viable claim against movants. Additionally, no party has opposed movants' application for a discovery stay.

## ARGUMENT

## I.    THE GUARANTORS' LIABILITY IS NOT DERIVATIVE OF THIRD-PARTY DEFENDANTS' ALLEGED LIABILITY

Third-Party Plaintiffs argue that their claims against Colliers, Frederick and Michaels are proper because Third-Party Plaintiffs' liability is derivative of that of Colliers, Frederick and Michaels (Piliero Mem. pp. 3-5). That is patently not the case.

The Complaint alleges that Plaintiff has sued the guarantors under the subject Guarantee because PGKM, the tenant under that lease, failed to pay all of the sums owed thereunder (Shapiro Aff. Exh. B). That alleged failure to pay is attributable solely to the tenant PGKM's failure to make all of the payments due under the Lease. There is no allegation that the third-party defendants induced the tenant not to pay or to otherwise breach the Lease, or that movants induced the guarantors to eschew their obligations under the Guarantee.

## II.   THE GUARANTORS CANNOT ASSERT A VIABLE NEGLIGENT MISREPRESENTATION CLAIM

A fundamental requirement of a negligent misrepresentation claim is a "special relationship". The relationship between a real estate broker and client is not a special relationship; rather, it is an arms-length business relationship that does not support a negligent misrepresentation claim. St. Paul Fire and Marine Ins. Co. v. Health Fielding Ins. Broking Ltd, 976 F. Supp. 198, 204 (S.D.N.Y. 1996) (broker-insurer). Sanitoy v. Shapiro, 705 F. Supp. 152, 155 (S.D.N.Y. 1989). [1] Even assuming *arguendo* that the relationship between a real estate broker and its client could ever become a special relationship, Third-Party Plaintiffs concede that this relationship lacked the necessary element of trust and confidence. They allege that:"[I]t was clear that Michaels had no interest in having this transaction go forward because he would earn no commission, or a far lower commission than he had hoped for." Third Party Complaint ¶ 19. See also ¶¶ 22, 23.

Third-Party Plaintiffs also have not pleaded any actual misrepresentation with the required particularity. AIG Global Securities Lending Corp. v. Banc of America Sec. LLC, 254 F. Supp.2d 373, 389 (S.D.N.Y. 2003) (Rule 9(b) governs pleading of negligent misrepresentation). They apparently contend that a sublease could not readily be achieved as movants allegedly represented was the case. But they do not allege a basis from which to infer that movants' representation was knowingly false. Falsity cannot be inferred from the fact that a sublease was not ultimately signed, inasmuch as the pleading discloses that the proposed subtenants' abandonment of the deal caused the failure (¶ 24). Thus, it is apparently only unfounded speculation that underlies the averment that

---

[1] *Accord,* Accusystems, Inc. v. Honeywell Info. Sys., Inc., 580 F. Supp. 474, 481 (S.D.N.Y. 1984); United Safety of Am., Inc. v. Consolidated Edison Co., 213 A.D.2d 283, 623 N.Y.S.2d 591 (1st Dep't 1995).

movants misrepresented the parties' readiness and willingness to proceed. *See*, Hausler v. Spectra Realty, Inc., 188 A.D.2d 722, 590 N.Y.S.2d 587 (3d Dep't 1992)(affirming dismissal of negligent misrepresentation claim absent indication that defendant acquired any specific information that she did not pass along to plaintiffs).

Moreover, this claim fails because Third-Party Plaintiffs do not identify any misrepresentation as of the date that an actual business relationship commenced. PGKM allegedly had a series of telephone conversations and meetings with Michaels and Frederick from June through September 2007. During June, July and August, PGKM did not retain movants, because it did not want to pay a commission to Colliers (¶ 14). Moreover, Michaels is alleged to have been conspicuously failing to act for PGKM to advance this transaction (¶¶ 19, 22, 23). The allegation that Third-Party Defendants misrepresented that New Millennium was prepared to enter into a new lease, but that the form of the transaction had not been established, is based on communications that PGKM allegedly had with movants during July and August, before PGKM retained Colliers (¶¶ 17, 19). There was no relationship, and thus no duty to provide "correct information", during that time period. Only on some unspecified date in early September is PGKM alleged to have retained Colliers, by virtue of Piliero's advice that PGKM would pay a commission (¶¶ 23, 24). Almost immediately thereafter, the proposed law firm subtenant advised PGKM that it no longer desired to sublet PGKM's space (¶ 24). There is no allegation that movants provided any information or had any communications at all during the brief time between when the agreement to pay a commission was made, during the second week of September (¶ 23), and the time "shortly thereafter" that the proposed law firm subtenant backed out (¶ 24). Thus, alleged negligent misrepresentations by movants during July and August would not be actionable because there was then no relationship

between PGKM and movants. Third-Party Plaintiffs do not aver any misrepresentations after PGKM allegedly retained Colliers.

This claim also fails because the representation that a sublease could be accomplished is not actionable. The misrepresentation "must be factual in nature and not promissory or relating to future events that might never come to fruition". Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 833 (2d Cir. 2000) (affirming summary judgment dismissal of misrepresentation claim predicated on representations about future energy output). Movants' alleged representations that they were uniquely situated to achieve a sublease is non-actionable as "mere puffery, opinions of value or future expectations". Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (1st Dep't 2003). Third-Party Plaintiffs have not specifically pleaded any existing fact that movants misrepresented.

It is also critical that Third-Party Plaintiffs cannot show one of the essential elements of a negligent misrepresentation claim - justifiable reliance. Hydro Investors, Inc. v. Taft, supra, 227 F.3d at 333. Third-Party Plaintiffs' claim that they were induced to act based on movants' misrepresentation fails because any reliance would not have been justifiable given movants' alleged revelation that they were disinclined to assist PGKM. Since "it was clear" to Third-Party Plaintiffs as of August 2007 "that Michaels had no interest in having this transaction go forward"(¶ 19), Third-Party Plaintiffs cannot have justifiably relied on his representations as a basis to proceed. Sophisticated law firm partners such as Third-Party Plaintiffs can hardly have been justified in relying under the circumstances. "New York courts are particularly disinclined to entertain claims of justified reliance" brought by a sophisticated party that failed to exercise care in its affairs. Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541 (2d Cir.), cert. denied, 522 U.S. 864 (1997).

Additionally, a party alleging fraud or negligent misrepresentation must plead loss causation, by alleging that the defendant's "misrepresentation induced it to enter into the transaction and that the misrepresentation was the cause of the actual loss suffered." Citibank v. K-H Corp., 968 F.2d 1489, 1495 (2d Cir. 1986). *Accord*, Solar Travel Corp. v. Nachtomi, 2001 WL 641151 (S.D.N.Y. June 8, 2001); Kwiatkowski v. Bear Stearns Co., Inc., 96 Civ. 4798, 1997 WL 538819, at *8 (S.D.N.Y. Apr. 29, 1997). Third-Party Plaintiffs cannot allege that movants' alleged inducement to retain Colliers led to any damages they sustain, which would be solely attributable to their own willful failure to make payments due under the Guarantee.[2]

Finally, the Third-Party Plaintiffs are not the proper parties to complain of any alleged misrepresentation by Colliers, Frederick and Michaels, because there was no privity between them and movants. The alleged relationship as client and broker was between PGKM and movants. The individual partners cannot bootstrap themselves into the relationship solely because they were the principals of PGKM. The Third-Party Complaint does not allege misrepresentations concerning the individuals' obligations as guarantors.

## III.    THIRD-PARTY PLAINTIFFS CANNOT STATE A FRAUD CLAIM

No viable fraud claim can be discerned from the Third-Party Complaint, which does not plead the elements of fraud with particularity. Rule 9(b), F. R. Civ. P.

The nature of the purported fraud claim is rather unclear from the pleading even as purportedly illuminated by the Piliero Mem. Third-Party Plaintiffs evidently allege that movants fraudulently induced PGKM to retain Colliers as brokers, by falsely assuring them that a sublease

---

[2] The misrepresentation also did not cause the proposed subtenant to abandon the prospective deal (¶ 24).

"would be accomplished" (Piliero Mem. p. 12). This claim fails for the elementary reason that the alleged fraudulent inducement did not cause any harm or potential harm to Third-Party Plaintiffs.

> Plaintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation).

Water St. Leasehold LLC v. Deloitte & Touche LLP, 19 A.D.3d 183, 796 N.Y.S.2d 598 (1st Dep't 1998)(citation and internal quotation marks omitted). Here, the potential subtenant's decision not to proceed based on its own changed needs (¶ 24) was the sole cause of PGKM's inability to consummate a deal with the subtenant. Movants did not cause the guarantors to fail to make payments allegedly owed pursuant to the Guarantee. Loss causation cannot be shown.

In any event, this allegation does not support a fraud claim because PGKM could not have reasonably relied on such a representation by movants that a sublease **would** be accomplished. There were multiple variables involved. PGKM, New Millennium, Intesa and the subtenant would have been required to negotiate and execute a sublease and consents. PGKM could not have reasonably relied on a representation that a sublease would be signed given the inherent uncertainties involved in such a transaction. Lazard Freres & Co. v. Protective Life Ins. Co., *supra*. Indeed, the prospective subtenant's change of plans illustrates how unrealistic it would have been to accept a supposed representation that the parties had a "done deal" prior to signed commitments by the parties. Thus, this claim fails because a party is simply "unjustified in relying upon representations concerning the future intent to act by third parties . . ." 320 Realty Management Co. v. 320 West 76th Corp., 221 A.D.2d 174, 633 N.Y.S.2d 295 (1st Dep't 1995)(affirming dismissal of fraudulent inducement claim).

It is sheer supposition that any representations were knowingly false when made. Third-Party Plaintiffs allege that movants falsely represented to PGKM that New Millennium was prepared to enter into an arrangement with the proposed subtenant, and that only the form of the relationship had to be agreed upon (Piliero Mem. p. 8, referencing Third-Party Complaint ¶ 19-20). There is no basis supplied to credit the conclusory allegation that this was a knowingly false representation when made.[3] Third-Party Plaintiffs simply assume that the representation must have been false, based on no evidence whatsoever. The Court cannot and should not accept Third-Party Plaintiffs' supposition that they must have been intentionally misled absent some factual basis to give rise to the necessary inference. The pleader's obligation to allege fraud with particularity precludes this type of wishful thinking pleading.

Third-Party Plaintiffs' fraud claim also fails to the extent they assert that movants did not intend to perform their obligations to bring about a deal. Representations of future intent are not actionable absent an "allegation that would support an inference that the representations were made with a present intention that they would not be carried out". Papp v. Debbane, 16 A.D.3d 128, 790 N.Y.S.2d 450 (1st Dep't 2005)(citing Lanzi v. Brooks, 43 N.Y.2d 778, 779-80, 402 N.Y.S.2d 384 (1977)). Accord, Stewart v. Jackson & Nash, 976 F.2d 86, 88-89 (2d Cir. 1992). The Third-Party Complaint lacks any concrete factual allegation supporting an inference that movants did not intend to do anything they allegedly undertook to do.

---

[3] It is not the case that subsequent events revealed the representation to have been false when made. The proposed deal failed because PGKM"s proposed subtenant changed its mind about entering into the lease. Thus, there was no longer any basis to inquire whether New Millennium would have agreed to a sublease, or a direct lease, or would have refused any deal with this subtenant. Third-Party Plaintiffs evidently have created from whole cloth the claim that movants misrepresented what New Millennium was willing to do.

Third-Party Plaintiffs evidently seek to bolster their fraud claim by conjuring up a motive to defraud. They allege that movants sought to earn a double commission, to be paid by both the new tenant and PGKM (¶¶ 14, 23). But it makes no sense that movants would have induced PGKM to retain them if they did not intend to seek to secure the sublease. Real estate brokers are paid only when they successfully rent space, and for that reason movants had nothing to gain by misrepresenting the facts to PGKM and then neglecting the proposed transaction in a fashion that necessarily resulted in their not earning a commission from PGKM. Matsumura v. Benihana Nat'l Corp., 542 F. Supp.2d 245, 255 (S.D.N.Y. 2008)("Plaintiff's supporting factual allegations must give rise to a 'strong inference' of scienter"). Thus, Third-Party Plaintiffs "have not adduced any facts probative of [movants'] motive to commit fraud. . ."

Finally, Third-Party Plaintiffs were not the parties allegedly defrauded. Any representations allegedly made by movants were made to PGKM, not to Third-Party Plaintiffs as guarantors.

## IV.    THE PURPORTED TORTIOUS INTERFERENCE CLAIM FAILS

The Third-Party Complaint does not plead the basis for a tortious interference claim (Piliero Mem. Pt. C). The elements of tortious interference with contract are: (1) the existence of a valid contract; (2) defendant's knowledge of the contract; (3) defendant's intentional interference with the contract; and (4) damages.  Lama Holding Co. v. Smith Barney, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 81 (1996). This cause of action requires an actual breach of the contract allegedly interfered with. NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc., 87 N.Y.2d 614, 620, 641 N.Y.S.2d 581 (1996).

Movants  are not alleged to have done anything to intentionally induce the guarantors to fail to make the payments allegedly owed under the Lease which PGKM had not made. Rather, movants dealt with PGKM, a law firm, in connection with that firm's effort to find a substitute tenant, and at

worst did nothing more than induce PGKM to use Colliers as its broker. Movants' interests were not furthered by having the guarantors fail to make payments due pursuant to the Guarantee.

The Third-Party Complaint does not allege that there were any discussions between Third-Party Plaintiffs and movants concerning the individual partners' obligations under the Guarantee, that movants even knew of the existence of the Guarantee or Third-Party Plaintiffs' obligations thereunder. The *ex cathedra* statement by counsel in the Piliero Mem. that movants were well aware of the Guarantee and its terms (Piliero Mem. p. 12) is no substitute for an allegation to that effect within the four corners of the actual pleading. Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1995)(reversing district court decision granting Rule 12(b)(6) motion because the court had improperly considered facts set forth in an attorney's affirmation that were not part of any pleading before the court).

## V.    MITCHELL'S OPPOSING PAPERS ARE UNPERSUASIVE

Defendant Mitchell's argument that he states a valid cross-claim for contribution and indemnification because those claims are predicated on movants' alleged tortious conduct (Mitchell Mem. pp. 2-3) simply ignores the controlling case law, cited in the Colliers Mem., which demonstrated that those claims do not lie given that the underlying cause of action asserted against Mitchell sounds in breach of contract. The fact that the supposed basis for the cross-claim is culpable conduct rather than contract (Mitchell Mem. p. 4) willfully misses the point: It is the nature of the underlying claim for relief that controls.[4]

---

[4] Mitchell's concession that he has no knowledge of the facts alleged in support of his Cross-claim, and that he is relying on the allegations of his former partners' Third-Party Complaint hardly bolsters his case that any culpable conduct occurred and led him to do or fail to do anything. (footnote continued)

Mitchell also argues that it is premature to assess the viability of a contribution claim prior to the adjudication of the underlying liability. That is only the case when a contribution claim is properly asserted; here, it is indisputable that no contribution claim lies.[5]

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant the motion to dismiss of Third-Party Defendants Colliers, Frederick and Mitchell, and stay discovery, together with such other and further relief as is just and proper.

Dated:      New York, New York
            July 24, 2008


                    LEWIS BRISBOIS BISGAARD & SMITH LLP


            By:_____
                    Peter T. Shapiro, Esq.
                    Attorneys for Third-Party Defendants Colliers
                    ABR, Inc., James Frederick & Richard Michaels
                    199 Water Street
                    New York, New York  10038
                    (212) 232-1300

_____

[5] Mitchell's argument that the motion is premature prior to discovery and ill-founded finds no support in the cited case. Hydro Investors, Inc. v. Trafalgar Power, Inc., *supra,* 227 F.3d at 20. That case did not address a pre-discovery dismissal motion, bur rather involved a post-trial appeal, and likewise did not involve a contribution claim arising from a contractual breach. The cited page addresses how to apply the economic loss rule when a claim is in a shadowy area that is not clearly contract and not clearly tort. That issue is inapplicable here, and the Mitchell Mem. fails to explain why the Second Circuit's decision might support Mitchell's position.

## CERTIFICATE OF SERVICE

I hereby certify that I served the within reply memorandum of law upon the attorneys for all of the parties hereto by first class mail and ECF on July 24, 2008.

Peter T. Shapiro (PS 9692)